UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>        Plaintiff,<br><br>v.<br><br>$470,000 IN UNITED STATES CURRENCY;<br>AND<br><br>ONE BLACK 2007 AUDI Q7 SUV,<br>BEARING VEHICLE IDENTIFICATION<br>NUMBER WA1BY74L77D038062,<br>        Defendants. | Civil Action No. |

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

The United States of America, by its attorney, Carmen M. Ortiz, United States Attorney for the District of Massachusetts, in a civil action of forfeiture pursuant to 21 U.S.C. § 881(a)(4) and (6), alleges that:

1. This Court has jurisdiction in this matter pursuant to 28 U.S.C. §§ 1345 and 1355. Venue is appropriate pursuant to 28 U.S.C. § 1395.

2. The defendant property consists of the following:

    a. $470,000 in United States currency, seized from Jorge L. Montero on July 15, 2011, during a motor vehicle stop on the Massachusetts Turnpike, Westbound, in Massachusetts (the "Defendant Currency"); and

    b. one black 2007 Audi Q7, bearing vehicle identification number WA1BY74L77D038062, and Florida registration 0516JE (the "Audi")

(together the "Defendant Properties").

3. As detailed in the Affidavit of John McDonnell, Special Agent with the United States Drug Enforcement Administration, attached hereto and incorporated herein by reference as Exhibit A, the United States has probable cause to believe that the Defendant Currency

represents moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical, or proceeds traceable to such an exchange, or moneys, negotiable instruments, and securities used or intended to be used to facilitate violations of 21 U.S.C. §§ 841 and/or 846; and the Audi was used or intended to be used to transport, or in any manner facilitate the transportation, sale, receipt, possession or concealment or drugs and, therefore, are subject to seizure and forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6) and (4), respectively.

WHEREFORE, the United States of America requests:

1. That a Warrant and Monition, in the form submitted herewith, be issued to the United States Marshal for the District of Massachusetts, or his designee, commanding him to give notice to all interested parties to appear and show cause why the forfeiture should not be decreed;

2. That judgment of forfeiture be decreed against the Defendant Properties;

3. That thereafter, the Defendant Properties be disposed of according to law; and

4. For costs and all other relief to which the United States may be entitled.

Respectfully submitted,

CARMEN M. ORTIZ,
United States Attorney,

By: /s/ Mary B. Murrane
MARY B. MURRANE
Assistant U.S. Attorney
1 Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3100
mary.murrane@usdoj.gov

Date: January 17, 2012

## VERIFICATION

I, John McDonnell, Special Agent with the United States Drug Enforcement Administration, state that I have read the foregoing Verified Complaint for Forfeiture *in Rem*, and the Affidavit, attached as Exhibit A, and that the contents thereof are true to the best of my knowledge, information, and belief.

_____
John McDonnell
Special Agent
United States Drug Enforcement Administration

Dated: January 17, 2012

## COMMONWEALTH OF MASSACHUSETTS

Suffolk, ss.                                                                  Boston

Then personally appeared before me the above-named John McDonnell, Special Agent with the United States Drug Enforcement Administration, who acknowledged the foregoing to be true to the best of his knowledge, information, and belief, and to be his free act and deed on behalf of the United States of America.

Subscribed to and sworn to before me this 17th day of January, 2012.

_____
Notary Public
My Commission Expires: 3/14/2014

JEAN L. JAMIESON
Notary Public
COMMONWEALTH OF MASSACHUSETTS
My Commission Expires
March 14, 2014

**EXHIBIT A**

**AFFIDAVIT OF SPECIAL AGENT JOHN McDONNELL**

I, John McDonnell, being duly sworn, depose and state as follows:

1. I am a Special Agent with the United States Drug Enforcement Administration (the "DEA"), and have served in this capacity since December 1998. I am currently assigned to the DEA Group 1 in Boston, Massachusetts. Group 1 includes DEA agents and local law enforcement agencies

2. During the course of my career and while serving as a Special Agent with the DEA, I have received specialized training regarding the activities of narcotics traffickers and various aspects of narcotics investigation, including the methods used to package, transport, store, and distribute narcotics, and the methods used by narcotics traffickers to conceal and launder the proceeds of their narcotics trafficking activities.

3. In addition to my training, I have had extensive experience in the investigation of the activities of narcotics traffickers. Throughout my career I have participated in over fifty narcotics investigations as a case agent and in subsidiary roles relating to the distribution of controlled substances, including cocaine, heroin, marijuana, diverted prescription pills and other illegal drugs. I personally have participated in narcotics trafficking investigations, including but not limited to, supervising narcotics investigations, conducting surveillance, using confidential informants, executing arrest and search warrants, and conducting court-authorized wire interceptions and electronic surveillance. I have debriefed over fifty defendants and informants who have had personal knowledge about narcotics trafficking activities and the operation of narcotics trafficking organizations. I have been the affiant on affidavits in support of search warrants, arrest warrants and court-authorized wire interceptions.

4. Based upon my training and experience, I am familiar with narcotics traffickers' methods of operation, including the distribution, storage, and transportation of narcotics and the collection of money that constitutes the proceeds of narcotics trafficking activities. Specifically, I am familiar with the manner in which narcotics traffickers use vehicles, common carriers, mail and private delivery services, and a variety of other means to transport and distribute narcotics and the proceeds of narcotics trafficking.

5. I submit this affidavit in support of a Complaint for Forfeiture *in Rem* against the following assets:

   a. $470,000 in United States currency seized from Jorge L. Montero ("Montero") on July 15, 2011 during a motor vehicle stop on the Massachusetts Turnpike, Westbound, in Massachusetts (the "Defendant Currency"); and

   b. one black Audi Q7, bearing vehicle identification number WA1BY74L77D038062, and Florida registration 0516JE (the "Audi")

(together, the "Defendant Properties").

6. This affidavit does not contain all the information known to me and other law enforcement officers regarding this investigation, but only those facts sufficient to establish probable cause for forfeiture of the Defendant Properties.

7. This affidavit is based upon my personal knowledge, as well as information provided to me by law enforcement personnel from the Massachusetts State Police ("MSP") involved in the investigation, and my review of records and reports relating to the investigation.

8. As set forth below, I have probable cause to believe that (1) the Audi is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(4) because it was a vehicle used, or intended for use, to transport, or in any manner facilitate the transportation, sale, receipt, possession or concealment of drugs (*see* 21 U.S.C. § 881(a)(2); 21 U.S.C. § 881(a)(4)); and (2)

the Defendant Currency is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6) because it was moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical, or proceeds traceable to such an exchange, or moneys, negotiable instruments, and securities used or intended to be used to facilitate violations of 21 U.S.C. §§ 841 and/or 846.

## The Investigation

9. On July 15, 2011 the Audi was stopped by a marked MSP K-9 Unit for speeding while driving west on the Massachusetts Turnpike in Massachusetts. MSP Trooper Gary Berlo ("Trooper Berlo") approached the Audi and after the driver rolled down the window, smelled an overwhelming odor of air freshener from inside the vehicle. The driver produced a Florida license and registration, which identified him as Montero. The Audi was registered to Montero. When Trooper Berlo asked Montero where he was coming from, Montero turned to the female passenger in the car (later identified as Elizabeth Santos) ("Santos") and asked her a question that Trooper Berlo could not hear. Then Montero and Santos both said that they were coming from Boston. When Trooper Berlo asked Montero where they were headed, Montero again turned to Santos and asked her an inaudible question. Trooper Berlo observed that Montero's chest was heaving. Santos also appeared to be nervous. Montero and Santos said they were going home to Florida. Trooper Berlo asked Montero where in Boston he was coming from and Montero stated "I don't know." Montero then turned to the female passenger and asked her a question, Montero turned to the Trooper and stated "We are coming from her family's house in Dorchester."

10. Based upon the overwhelming air freshener odor, the nervous demeanor of Montero and Santos, and the inconsistencies of Montero's answers to questions, Trooper Berlo

asked Montero to step out of the Audi. Trooper Berlo conducted a pat frisk of Montero for weapons. Trooper Berlo felt a large bulge in Montero's left pocket, and reached in and removed the item, which was a roll of United States currency. Trooper Berlo asked Montero how much money was in the roll and Montero said approximately $3,000, but did not know the exact amount.

11.     Trooper Berlo handed the roll of currency back to Montero, who placed it back in his left pocket. Trooper Berlo asked Montero where he got the money, to which Montero said "I got it from the bank." When asked where he withdrew the money from, Montero said "I don't remember." Trooper Berlo asked Montero if he had a receipt from the bank and Montero said he did not. When asked why he needed so much cash, Montero said he needed it for "the trip." Montero maintained possession of the money on his person. Trooper Berlo asked Montero if there was anything illegal in the Audi, and Montero said, "no just luggage." Montero then opened the rear cargo area of the Audi and said "see for yourself." As Montero opened the rear cargo door, Trooper Berlo once again smelled an overwhelming odor of air freshener. Trooper Berlo saw three air fresheners, but the smell was not consistent with only three air fresheners.

12.     Trooper Berlo asked Montero if he (Trooper Berlo) could walk his K-9 Cid around the exterior of the Audi. Montero said to "go right ahead, I'm not hiding anything." At the time of the stop, Cid was a six-year old German Shepherd certified in the detection of narcotic odors, having completed a course in narcotic detection through the New England State Police Administrators Conference in 2008, and receiving subsequent certifications, most recently on June 15, 2011.

13.     Trooper Berlo then asked Santos to exit the Audi. Trooper Berlo and Cid did a scan of the Audi and Cid immediately alerted to the floor behind the second row seat. When told

that Cid alerted to the Audi, Montero said he did not know why, there were no drugs in the vehicle.

14. Trooper Berlo then noticed a tear in the carpet under the passenger seat, and a tear in the carpet between the passenger seat and center console. Based on my training and experience, I know that tears such as these can indicate the existence of an after-market compartment in a vehicle. Trooper Berlo believed that the tear indicated that the Audi held an after-market compartment.

15. Montero agreed to drive the Audi to the Weston State Police Barracks for further investigation. At the Barracks, officers discovered two aftermarket compartments that ran the length of the interior of the vehicle. The compartments ran from under the front seat area past the rear passenger area. It is not known if the compartments operate by a mechanical device. Officers gained access to the compartments and inside the compartments discovered 45 heat-sealed bundles of United States currency in various denominations.

16. Based upon my training and experience as a Special Agent investigating narcotics distribution, I know that drug transactions can be cash transactions and that those involved with the illegal narcotics business may carry significant amounts of cash. I also know that those in the drug trade may install hidden aftermarket compartments in vehicles to facilitate the transportation of drugs and the proceeds of drugs. I further know that those involved in the shipment of drug proceeds may try to mask the odor of narcotics on the money by sealing the money or using items that have a strong odor in the packaging of the currency.

17. The currency was later counted and totaled $470,000 (*i.e.*, the Defendant Currency). The money was contained in dryer sheets and sealed in shrink wrap. The money was separated by denomination and included ones, fives, tens, twenties, fifties, one hundred dollar

bills. One of the bundles of money had a piece of paper with the number 6,000 written on it. I believe this means $6000 in United States currency was in the bundle. One bundle had a piece of paper with 20. written on it. I believe this means that $20,000 in United States currency was in the stack. At least one bundle had "con dios" written on it which means "with God" in Spanish. I believed the sender of the money was asking for protection from God to see the money to its destination.

### Conclusion

18.   Based upon the information set forth above, I have probable cause to believe that the Audi is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(4) because it was a vehicle used, or intended for use, to transport, or in any manner facilitate the transportation, sale, receipt, possession or concealment of drugs. In addition, I have probable cause to believe that the Defendant Currency is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6) because it was moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical, or proceeds traceable to such an exchange, or moneys, negotiable instruments, and securities used or intended to be used to facilitate violations of 21 U.S.C. §§ 841 and/or 846.

Signed under the pains and penalties of perjury this 17th day of January 2012.

_____
John McDonnell, Special Agent,
United States Drug
Enforcement Administration